IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUDY ENDERS/MADEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 05-669 (JJF) |
| | ) | |
| SUPER FRESH, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT

William W. Bowser, Esquire (Bar I.D. 2239)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone:  (302) 571-5008
Facsimile :  (302) 576-3476
wbowser@ycst.com; mdibianca@ycst.com
Attorneys for Defendants

**OF COUNSEL**
PROSKAUER ROSE LLP
John P. Barry, Esq. (JPB-6489)
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
973.274.3299
jbarry@prosauker.com
Attorneys for Defendant
Admitted *Pro Hac Vice*

DATE: February 15, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .......................................................1

SUMMARY OF ARGUMENT ................................................................................2

STATEMENT OF FACTS .....................................................................................3

    A.   Super Fresh's Corporate Structure .....................................................3

    B.   Super Fresh's Policy Against Harassment ............................................4

    C.   Enders/Maden's Employment ...........................................................4

    D.   Plaintiff's Part-Time Status .............................................................6

    E.   Enders/Maden's Failure To Mitigate Her Damages ...............................7

ARGUMENT ....................................................................................................7

   **I.**    **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT** .........................7

  **II.**    **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE SUPER FRESH HAS A COMPLAINT PROCEDURE, OF WHICH PLAINTIFF KNEW BUT FAILED TO USE** ..................................8

    A.   Super Fresh Took Reasonable Steps to Avoid and Remedy Harassment. ...................................................................................9

    B.   Plaintiff Unreasonably Failed to Take Advantage of any Preventive or Corrective Opportunities Provided by Super Fresh or to Avoid Harm Otherwise ......................................................................10

 **III.**    **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES BY NEVER COMPLAINING OF UNLAWFUL TOUCHING** ........................................................................10

 **IV.**    **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE NONE OF THE ALLEGED CONDUCT WAS SEVERE AND PERVASIVE NOR WAS IT BASED ON HER GENDER** ..........................11

A.   The Alleged Conduct Was Not Based on Sex and, Therefore, Is Not Actionable Under Title VII ........................................................................12

B.   The Alleged Conduct Was Not Sufficiently Severe or Pervasive to Satisfy the Legal Threshold for Establishing a Hostile Work Environment ........................................................................................................14

C.   There Is No Basis For Holding Super Fresh Liable For The Alleged Conduct By Plaintiff's Supervisor ........................................................15

**V.    PLAINTIFF'S DAMAGES SHOULD BE REDUCED DUE TO HER FAILURE TO SEEK EMPLOYMENT SUBSEQUENT TO HER TERMINATION FROM SUPER FRESH............................................15**

CONCLUSION...............................................................................................................17

DB02:5786850.1                                                              064808.1002

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................... 8

*Andrews v. City of Philadelphia*,
   895 F.2d 1469 (3d Cir. 1990) ..................................................................... 14

*Baldwin County Welcome Ctr. v. Brown*,
   466 U.S. 147 (1984)................................................................................... 10

*Burlington Indus., Inc. v. Ellerth*,
   524 U.S. 742 (1998)................................................................................ 3, 9

*Calloway v. E.I. DuPont de Nemours & Co.*,
   2000 U.S. Dist. LEXIS 12642
   (D. Del. 2000) .............................................................................. 12, 13, 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................ 7, 8

*Childress v. Dover Downs, Inc.*,
   2000 U.S. Dist. LEXIS 4881
   (D. Del. 2000) ...................................................................... 9, 10, 11, 14

*Edwards v. Chester Upland Sch. Dist.*,
   No. Civ. A. 96-7162, 1999 WL 179693
   (E.D. Pa. March 24, 1999) ......................................................................... 16

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998).......................................................................... passim

*Ford Motor Co. v. EEOC*,
   458 U.S. 219 (1982).................................................................................. 15

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993).............................................................................. 11, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)................................................................................... 8

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998).................................................................................. 12

*Tubari Ltd., Inc. v. Nat'l Labor Relations Bd.*,
   959 F.2d 451 (3d Cir. 1992) ..................................................................... 15

*Verdin v. Weeks Marine Inc.*,
   No. 03-4571, 2005 U.S. App. LEXIS 2649
   (3d Cir. Jan. 25, 2005) ................................................................................. 11

*Wastak v. Lehigh Valley Health Networks*,
   342 F.3d 281 (3d Cir. 2003) ....................................................................... 10

*Wooley v. Colonial Sch. Dist.*,
   1993 U.S. Dist. LEXIS 19110
   (D. Del. 1993) ............................................................................................. 15

## **RULES**

Fed. R. Civ. P. 1 .............................................................................................. 7

Fed. R. Civ. P. 56(c) ....................................................................................... 7

Fed. R. Civ. P. 56(e) ....................................................................................... 8

iv

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff *pro se* Judy Enders/Maden ("Plaintiff") was hired by Defendant Super Fresh ("Super Fresh" or "the Company") in August 1998 as a meat wrapper.  Pursuant to the terms of the applicable collective bargaining agreement ("CBA"), Plaintiff, who was the least senior meat wrapper was "bumped" from full-time to part-time when a more senior meat wrapper returned to work from a disability-based leave of absence. Following the change, Plaintiff worked one week before taking a leave of absence in August 2003.  Plaintiff's employment was terminated in March 2005 when she failed to submit documentation justifying her continued absence from work.

Plaintiff initiated the present case by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Delaware Department of Labor ("DDOL") on January 29, 2004.  (A1).  The Charge alleged gender-based harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, and disparate pay under the Equal Pay Act.  On June 27, 2005, the EEOC ruled that it could not substantiate Plaintiff's claims and issued a Right to Sue letter.  (D.I. 2)

Plaintiff filed a *pro se* Complaint on September 14, 2005.  (D.I. 2).  Discovery began in earnest in June 2006 and was scheduled to end on November 30, 2006.  (D.I. 15).  There were several Motions and Orders regarding discovery, which culminated in Court Orders:  (i) precluding Plaintiff's spouse from attending Plaintiff's deposition and from deposing Defendant's witnesses (D.I. 32); (ii) denying Plaintiff's Motion for Appointment of Counsel (D.I. 36); (iii) granting Defendant's motion to compel Plaintiff to appear for deposition, extending discovery until January 19, 2007 to allow time for Plaintiff's deposition and setting a February 15, 2007 deadline for the filing of dispositive

1

motions (D.I. 40); and (iv) denying Plaintiff's Motion for Reconsideration of the Order

denying her Motion for Appointment of Counsel.  (D.I. 39).

Discovery has closed and Defendant has filed its Motion for Summary Judgment.

This is Defendant's Opening Brief in Support of that Motion.

## SUMMARY OF ARGUMENT

Summary judgment dismissing Plaintiff's gender discrimination and harassment

claims is warranted because the undisputed facts demonstrate that:

1.    No action was directed at Plaintiff because of her gender.  To the contrary,

the record facts establish that:

       a)    The decision to "bump" Plaintiff, who was the least senior meat
        wrapper, from full-time to part-time was dictated by the terms of
        the governing collective bargaining agreement ("CBA");

       b)    It was the return to work of a woman (not a man) who "bumped"
        Plaintiff from full-time to part-time;

       c)    Plaintiff was only terminated because she failed to submit
        documentation or otherwise remain in contact with the Company
        during her leave of absence from August 2003 to March 2005; and

       d)    Plaintiff's work schedule had nothing to do with her gender.

2.    Plaintiff has not alleged actions that are sufficiently severe or pervasive to

rise to the level of a hostile work environment.

       a)    Plaintiff's schedule was better than that of the other meat wrapper
        in her store – Plaintiff admitted that she had first choice and the
        other meat wrapper had to work the shifts that Plaintiff did not
        want;

       b)    The decision to bump Plaintiff was made pursuant to the terms of
        the governing CBA and the alleged harasser, Richard Elliot
        ("Elliot"), played no role in that decision;

       c)    Plaintiff could identify only two occasions when Elliot spoke
        inappropriately towards her – he allegedly "yelled at her" for

working too slow and because she made too many requests to change her schedule;

3.    Plaintiff's allegations of unlawful touching are not actionable as they are time-barred because the last alleged act occurred in November 2001 and her Charge is limited to actions that occurred on or after April 4, 2003.

4.    Plaintiff failed to exhaust her administrative remedies because her Charge and the resulting investigation addressed only allegations involving her schedule and her part-time status.

5.    Super Fresh is able to prove the affirmative defense set forth in the *Ellerth* and *Faragher* decisions because Plaintiff unreasonably failed to utilize the Company's complaint procedures, of which she was well aware.

## STATEMENT OF FACTS

### A.    Super Fresh's Corporate Structure

Super Fresh is a subsidiary of The Great Atlantic & Pacific Tea Company, Inc. ("A&P"). Super Fresh operates grocery stores both in the State of Delaware and elsewhere across the country. (A3). The Delaware stores are divided into eight districts based on location. (A24). Plaintiff worked in Store #562 located in Wilmington, Delaware. (A5). Store #562 is one of eight stores in District 5. (A24).

Like all Super Fresh stores, Store #562 has various departments, including the deli, bakery, meat, seafood and grocery departments. (A3). Each department is led by a Department Manager. (A3). All Department Managers report to a Store Manager. (A3).

**B.    Super Fresh's Policy Against Harassment**

Throughout Plaintiff's employment, Super Fresh maintained a written policy against discrimination and harassment, including sexual harassment.  (A25).  The policy was prominently posted on a store bulletin board and Plaintiff had a copy in her possession.  (A27).

The sexual harassment policy stated, in pertinent part, that "[i]t is the policy of our Company, namely [Super Fresh], and its family of companies to prohibit sexual harassment.  Harassment in the workplace on the basis of sex will not be tolerated." (A25).  The policy required employees to report any sexually harassing behavior to the Human Resources Department and identified the appropriate human resource professionals to be contacted by name, address and telephone number.  (A27).

Super Fresh also had a policy against harassment in the workplace on the basis of any protected classification.  (A25).  Plaintiff was familiar with that policy, which also set forth a complaint procedure explaining, in pertinent part:

> [a]n employee experiencing harassment . . . **must** report the matter to his/her Personnel Department as soon as possible so that steps may be taken to end the problem. . . Each reported incident will be appropriately investigated . . . Any retaliation against an individual who has complained about harassment . . . is prohibited and will not be tolerated. . . . **VIOLATIONS OF THIS POLICY WILL NOT BE TOLERATED**.

(A25) (emphasis in the original).  In addition, there was a "1-888" telephone number posted in the store for employees to make inquiries or complaints anonymously.  (A28).

**C.    Enders/Maden's Employment**

Plaintiff was hired in August 1998 as a part-time meat wrapper in the Meat Department.  She became a full-time meat wrapper on or about April 16, 2000.  (A7).

4

Plaintiff reported to Rich Elliot, the Meat Department Manager, throughout her employment with Super Fresh.  (A4).

The primary responsibilities of a meat wrapper were to wrap, date, and stock meat in the store.  Meat wrappers were also responsible for stocking the lunch meat.  (A6).  At all times during Plaintiff's employment, all of the meat wrappers in Store #562 were women.  (A10).

Plaintiff alleges that Elliot subjected her to unwanted touching, with the last incident occurring as late as November 2001.  (A21).  Plaintiff never complained to anyone about Elliot's alleged conduct nor did she mention any unwanted touching in her Charge.  (A1).  She also testified that she did not mention during the subsequent investigation because her primary concern was her schedule and being "bumped" to a part-time schedule.   (A22-23).

Plaintiff went out on an extended leave of absence in connection with the birth of her child on January 17, 2002.  (A8-9).  When Plaintiff concluded her leave on September 30, 2002, she was unable to return to work at the scheduled start time of 7 a.m. because of day care issues.  In light of this conflict, Elliot allowed her to begin her shift at 8 a.m.  (A11-13).

Shirley Perryman was the only other meat wrapper at this time.  Perryman was frequently required to begin her shift at 7 a.m. and sometimes as early as 6 a.m.  Plaintiff was not required arrive at the earlier start times as Perryman was required to do.  (A12-13).  The terms of the governing CBA gave Plaintiff the ability to select her preferred shifts, leaving Perryman to work shifts that Plaintiff did not want.  (A12-13).

Plaintiff testified that she complained on one occasion to the Store Manager, John Colantuono, and to the union regarding the alleged denial of certain requests for adjustments to her schedule.  Plaintiff concedes, however, that she never complained about any alleged discrimination or harassment.  (A14-15).

At deposition, Plaintiff testified that she could recall only two occasions when she believed Elliot spoke inappropriately to her.  (A18-19).  Specifically, Plaintiff alleges that he yelled at her once for working too slow and once when she requested to change her schedule.  (A19).

### D.    Plaintiff's Part-Time Status

Victoria McWilliams began working for Super Fresh in November 1983.  She had been a meat wrapper at a Super Fresh store in New Castle, Delaware. McWilliams went out on a leave of absence, from which she was scheduled to return on August 2003.

When McWilliams was prepared to return to work, the meat wrapper who assumed her position in the New Castle had become a shop steward, which entitled her to "super-seniority" under the terms of the CBA.  With "super-seniority" status, the Shop Steward was exempted from the bumping process that occurs when employees return to work from, for example, leaves of absences.  (A34).

Pursuant to the terms of the CBA, McWilliams would "bump" the least senior meat wrapper in the district of stores in which she worked from full-time to part-time.  (A35).  Plaintiff was the least senior meat wrapper in the district, and thus McWilliams "bumped" Plaintiff from full-time to part-time.  Plaintiff conceded at deposition that the bumping was carried out pursuant to the terms of the CBA.  (A16-17).  After being bumped by McWilliams from full-time to part-time, Plaintiff worked one week and then began a leave of absence in August 2003.  (A21).

When Plaintiff failed to return to work or otherwise notify the Company of her condition, her employment was terminated by operation of policy in March 2005.  (A21).

### E.    Enders/Maden's Failure To Mitigate Her Damages

Plaintiff testified that she has not worked since going out on medical leave from Super Fresh and has not made any efforts to find employment.  (A21).  Moreover, Plaintiff stated that she did not intend to look for employment until the conclusion of this lawsuit.  (A21).

### ARGUMENT

## I.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment provides a procedure whereby unfounded claims such as those in this case can be eliminated without recourse to a costly, lengthy and unnecessary trial.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that "there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.,* 477 U.S. at 324.  A moving defendant need only show the absence of proof on any of the essential elements of the plaintiff's case.  *Id.* at 323.  Once a properly supported motion for summary

7

judgment has been made, the burden shifts to the nonmoving party to "set forth specific

facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, to

withstand the motion, the nonmovant must do more than present evidence that is merely

colorable, conclusory or speculative; it must present "concrete evidence from which a

reasonable [fact-finder] would return a verdict in [her] favor." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 256 (1986). In the end, the nonmovant must do more than

show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE SUPER FRESH HAS A COMPLAINT PROCEDURE, OF WHICH PLAINTIFF KNEW BUT FAILED TO USE

In her Complaint, Plaintiff asserts gender discrimination and harassment claims

under Title VII.[1] (D.I. 2). Plaintiff, however, cannot sustain these claims because Super

Fresh has a policy prohibiting discrimination and harassment, as well as reporting

procedures for making complaints. Despite being aware of and in possession of such

procedures, Plaintiff failed to report a single instance of discrimination or harassment by

Elliot or anyone else. It is well settled that Super Fresh cannot be vicariously liable for

alleged discrimination or harassment by Elliot because it can successfully avail itself of

the *Faragher/Ellerth* affirmative defense. *See Faragher v. City of Boca Raton*, 524 U.S.

---

[1] Notably, in her Charge, Plaintiff also asserted a claim under the Equal Pay Act ("EPA"). This claim is not discussed in detail in the following analysis because it is undisputed that Plaintiff was paid pursuant to the terms of the CBA, (A32-34), and there are no male comparators, as all of the meat wrappers were female. To establish a *prima facie* claim under the EPA, Plaintiff has the initial burden of proving that: (1) the employer pays higher wages to an employee of the opposite sex within the establishment; and (2) the plaintiff and the comparator perform equal work on jobs requiring substantially equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *Underwood v. Sears, Roebuck & Co.*, 343 F. Supp. 2d 259 (D. Del. 2004); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Here, Plaintiff has failed to allege (nor could she prove) that a male meat wrapper was paid higher wages at Store #562 because all of the meat wrappers were female. Summary judgment is appropriate for Plaintiff's claim under the EPA.

775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-61 (1998);

*Childress v. Dover Downs, Inc*., 2000 U.S. Dist. LEXIS 4881, *30 (D. Del. 2000).

In *Faragher*, the United States Supreme Court recognized an affirmative defense

for employers for harassment claims where:

> (1).    the employer exercised reasonable care to prevent and
>         correct promptly any sexually harassing behavior; and
>
> (2).    the plaintiff employee unreasonably failed to take
>         advantage of any preventive or corrective opportunities
>         provided by the employer or to avoid harm otherwise.

*Faragher,* 524 U.S. at 807.  In the present case, Super Fresh can establish both elements

of the affirmative defense.

### A.    Super Fresh Took Reasonable Steps to Avoid and Remedy Harassment.

Super Fresh has a long-standing policy against discrimination and harassment and

has demonstrated a strong commitment to preventing and correcting harassment in the

workplace.  Super Fresh's efforts to prevent and correct harassment included:

- development of an anti-harassment policy that contains an effective complaint procedure;

- publication of the policy against sexual harassment in postings in each store; and

- periodic training of employees regarding sexual harassment and other employment issues.

There can be no dispute that Super Fresh's anti-harassment policy and complaint

procedures are sufficient to satisfy its obligation to prevent sexual harassment, as

required by the first prong of the *Faragher/Ellerth* affirmative defense.

9

**B.    Plaintiff Unreasonably Failed to Take Advantage of any Preventive or Corrective Opportunities Provided by Super Fresh or to Avoid Harm Otherwise**

Plaintiff concedes that she was in possession of Super Fresh's Anti-Harassment Policies during the time in which the alleged conduct occurred.  Despite being familiar with such policies, and the procedures for making complaints, Plaintiff admits that she never complained to anyone at Super Fresh about Elliot's alleged misconduct.  Indeed, Plaintiff testified that she complained once to the store manager and to the union about not getting the schedule that she wanted, but failed to report that she believed this to be based on her gender or part of a campaign of harassment against her.  Accordingly, there can be no dispute that Plaintiff failed to avail herself of Super Fresh's procedures for reporting discrimination and harassment, as required by the second prong of the *Faragher/Ellerth* affirmative defense.

**III.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES BY NEVER COMPLAINING OF UNLAWFUL TOUCHING**

Plaintiff's allegation of unlawful touching must be dismissed because Plaintiff unreasonably failed to avail herself of A&P's anti-harassment and complaint procedures, of which she was well aware.  This claim must also be dismissed however, because it is time-barred.

Under Title VII, a plaintiff must file her EEOC Charge within 300 days after her claims accrued.  *Wastak v. Lehigh Valley Health Networks*, 342 F.3d 281, 285 (3d Cir. 2003); *Childress,* 2000 U.S. Dist. LEXIS at *30.  Moreover, the administrative filing requirement is strictly applied and will not "be disregarded by courts out of a vague sympathy for particular litigants."  *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (dismissing *pro se* Title VII complaint for failure to comply with

administrative filing requirements). All of Plaintiff's claims based on events occurring prior to April 4, 2003 (*i.e.*, 300 days before January 29, 2004), are time-barred and should be dismissed. *See Verdin v. Weeks Marine Inc.*, No. 03-4571, 2005 U.S. App. LEXIS 2649, *5-6 (3d Cir. Jan. 25, 2005) (affirming dismissal of all allegations that occurred more than 300 days before EEOC Charge was filed).

Plaintiff concedes that the last time Elliot allegedly touched her in a harassing manner was in November 2001, which was approximately *790 days* prior to January 29, 2004, the date on which she filed her Charge with the Delaware Department of Labor. Accordingly, Plaintiff's claims involving alleged touching by Elliot are clearly time-barred and should be dismissed as a matter of law.

## IV.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE NONE OF THE ALLEGED CONDUCT WAS SEVERE AND PERVASIVE NOR WAS IT BASED ON HER GENDER

To establish a *prima facie* case of sexual harassment, Plaintiff must show that: (1) she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment; and (4) there is a specific basis for imputing the conduct to Super Fresh. *See Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993); *Childress,* 2000 U.S. Dist. LEXIS at *28.

To state an actionable claim of sexual harassment, Plaintiff must show that her "workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult' . . . that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys. Inc.*, 510 U.S. at 21 (citation omitted). Not every instance of verbal or physical harassment in the workplace

rises to the level of actionable harassment.  *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75 (1998).  The Supreme Court has made clear that "conduct must be extreme" to constitute actionable harassment and that courts must ensure that Title VII does not become a "general civility code":

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code."  Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing."  We have made it clear that conduct *must be extreme* to amount to a change in the terms and conditions of employment.

*Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (citations omitted) (emphasis added).

In the present case, Plaintiff has failed to adduce sufficient evidence to establish a *prima facie* case.  Namely, Plaintiff have failed to show: (i) that the conduct was based on her sex; (ii) that the alleged conduct was so severe or pervasive as to alter the conditions of her employment and create an abusive working environment; or (iii) that there is a basis for holding Super Fresh liable for the alleged conduct of Plaintiff's supervisor.

## A.    The Alleged Conduct Was Not Based on Sex and, Therefore, Is Not Actionable Under Title VII

The Supreme Court has held that, in order to sustain a claim for harassment, Plaintiff must show that the conduct occurred *because of her sex.*"  *Oncale,* 523 U.S. at 80 ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."); *Calloway v. E.I. DuPont de Nemours & Co.,* 2000 U.S. Dist. LEXIS 12642, *17 (D. Del. 2000) (granting summary judgment in favor of the employer because, "[a]lthough plaintiff alleges instances of unprofessional and spiteful behavior on

12

the part of her co-workers and supervisors, her allegations are devoid of any incidents wherein she was confronted with negative, gender-related comments. Nor does she complain of the use of insulting or derogatory language relating to women generally or herself as a women specifically.").

Here, Plaintiff alleges that Elliot changed her schedule after she got married and had a baby, that he refused to accommodate her schedule requests, and that he yelled and screamed at her in front of customers. Plaintiff fails to allege, however, a single fact to suggest that any of the alleged incidents (even if true) were based on her sex, and therefore such claims are not cognizable under Title VII.

With respect to her schedule, Plaintiff conceded at deposition that the only other similarly situated employee, who was also a woman, did not receive a more favorable schedule than she did. Indeed, as the more senior meat wrapper in her store (the other meat wrapper was part-time), Plaintiff had first choice of shifts, and the other meat wrapper worked the shifts that she did not want.

With respect to the alleged yelling, Plaintiff testified that Elliot once yelled that she "worked too slow" and once that she "made too many requests to change her schedule." Elliot, however, did not comment upon her gender when he allegedly yelled at her on these two occasions. As Elliot's comments were not tied to her gender, they are not actionable. *Calloway*, 2000 U.S. Dist. LEXIS at *17.

13

### B.    The Alleged Conduct Was Not Sufficiently Severe or Pervasive to Satisfy the Legal Threshold for Establishing a Hostile Work Environment

As noted above, to avoid summary judgment on her harassment claim, Plaintiff must establish that she was subjected to conduct that was so severe or pervasive as to create an abusive working environment. *Harris,* 510 U.S. at 21.  Whether an environment is sufficiently hostile or abusive to alter the conditions of an employee's work environment must be determined by the totality of the circumstances. *Id*. at 23. *See also Faragher,* 524 U.S. at 788 (*citing Harris,* 510 U.S. at 23); *Childress,* 2000 U.S. Dist. LEXIS at *29 (*citing Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)).  No single factor is determinative. *Harris*, 510 U.S. at 23.  Among the factors considered are:  the "frequency of the discriminatory conduct; its severity; whether [the conduct] is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.  The conduct must be sufficiently severe or pervasive so as to create an objectively hostile environment; Plaintiff's subjective beliefs are not enough. *Id.* at 21.

In the present case, the two occasions when Elliot allegedly yelled at Plaintiff– once for working too slow and once for making too many schedule change requests–fall far short of the "severe and pervasive" standard required to sustain a claim of sexual harassment. *Calloway,* 2000 U.S. Dist. LEXIS at *23-24 (plaintiff failed to establish the third element of her *prima facie* case because evidence "that over a two-month period plaintiff was subjected to sporadic, unwelcome conduct and disparaging utterances" was not sufficiently severe or pervasive).  Accordingly, even if true, Plaintiff has not alleged facts sufficient to constitute actionable harassment and therefore, cannot establish the third element of her *prima facie* case.

14

**C.    There Is No Basis For Holding Super Fresh Liable For The Alleged Conduct By Plaintiff's Supervisor**

As stated above, there is no basis for holding Super Fresh liable for the alleged conduct by Elliot as Super Fresh had an effective policy against discrimination and harassment and Plaintiff failed to report a single instance of alleged discrimination or harassment, despite signing, reviewing and possessing the relevant policies. Accordingly, Plaintiff cannot establish the fourth element of her *prima facie* case. *Faragher,* 524 U.S. at 807.

**V.    PLAINTIFF'S DAMAGES SHOULD BE REDUCED DUE TO HER FAILURE TO SEEK EMPLOYMENT SUBSEQUENT TO HER TERMINATION FROM SUPER FRESH**

Even assuming, *arguendo,* that any of Plaintiff's claims had merit, her claim for back pay must be reduced because of her failure to mitigate.  An employer is entitled to a reduction of a back pay award where the employee has willfully incurred losses through unjustifiably refusing adequate interim employment.  *Tubari Ltd., Inc. v. Nat'l Labor Relations Bd.*, 959 F.2d 451, 453-54 (3d Cir. 1992).  This rule exists because "in considering what amounts to 'actual damages', it is difficult to justify awarding plaintiff those damages which plaintiff [herself] could have avoided and a statute, or case law, requires [her] to avoid."  *Wooley v. Colonial Sch. Dist.,* 1993 U.S. Dist. LEXIS 19110, *8 (D. Del. 1993).  *See also Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 n.15 (1982) ("Where one person has committed a tort, breach of contract or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages.  The person wronged cannot recover for any item of damage which could thus have been avoided") (citation omitted).  Where, as here, the plaintiff willfully withdrew from the labor market, she has failed to mitigate

15

her damages and is not entitled to recovery for the period during which she was voluntarily unemployed. *Edwards v. Chester Upland Sch. Dist.*, No. Civ. A. 96-7162, 1999 WL 179693, at *1 (E.D. Pa. March 24, 1999).

Plaintiff testified that she has not worked since going out on medical leave from Super Fresh and has not made any efforts to find employment. Moreover, Plaintiff stated that she did not intend to look for employment until the conclusion of this lawsuit and offered no justification for her refusal to seek employment. Accordingly, even assuming, *arguendo,* that Plaintiff's claims were meritorious, her damages must be cut off because of her admitted failure to mitigate.

16

## CONCLUSION

For the reasons set forth in the brief above, Defendant Super Fresh respectfully requests that summary judgment be granted and that Plaintiff Judy Enders/Maden's Complaint be dismissed in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. DiBianca
William W. Bowser, Esquire (Bar I.D. 2239)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone:  (302) 571-5008
Facsimile :  (302) 576-3476
wbowser@ycst.com; mdibianca@ycst.com
Attorneys for Defendants

**OF COUNSEL**
PROSKAUER ROSE LLP
John P. Barry, Esq. (JPB-6489)
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
973.274.3299
jbarry@prosauker.com
Attorneys for Defendant
Admitted *Pro Hac Vice*

DATED:        February 15, 2007

17