```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF DELAWARE

JUDY ENDERS/MADEN,                 :
                                   :
          Plaintiff,               :
                                   :
     v.                            :    Civil Action No. 05-669-JJF
                                   :
SUPER FRESH,                       :
                                   :
          Defendant.               :
```

Judy Enders/Maden, Wilmington, Delaware.

Pro Se Plaintiff.

John P. Barry, Esquire of PROSKAUER ROSE LLP, Newark, NJ.
William W. Bowser, Esquire and Margaret M. DiBianca, Esquire of
YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendant, Super Fresh.

**MEMORANDUM OPINION**

January ⏳ 2009
Wilmington, Delaware

Farnan, District Judge

Pending before the Court is Defendant's Motion For Summary Judgment. (D.I. 43.) For the reasons discussed, the Court will grant Defendant's Motion.

## I.   BACKGROUND

### A.   PROCEDURAL BACKGROUND

On September 14, 2005, Plaintiff Judy Enders/Maden, who is proceeding pro se, filed this action against Defendant Super Fresh pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., alleging gender discrimination and sexual harassment. (D.I. 2.) Briefly, Plaintiff alleges that Defendant, in a discriminatory manner, terminated her employment, denied her full-time employment status, and denied her scheduling requests. Defendant further alleges that her immediate supervisor subjected her to inappropriate sexual touching. (Id. at 2, 4.) On February 15, 2007, Defendant filed a Motion For Summary Judgment. (D.I. 43.) In response, Plaintiff requested additional discovery and the appointment of counsel. (D.I. 48.) After reviewing Plaintiff's request for additional discovery, the Court concluded that resolution of summary judgment was premature and denied Defendant's Motion for Summary Judgment with leave to renew. (D.I. 51.) After the close of an extended discovery period, Defendant filed a Motion To Renew its Summary Judgment Motion. (D.I. 58.) Plaintiff failed to respond to the Motion To

1

Renew and, in fact, took no subsequent measures to pursue her
Complaint. On June 25, 2008, the Court granted Defendant's
Motion To Renew and advised Plaintiff that an answering brief to
Defendant's Motion For Summary Judgement was to be filed by July
15, 2008. (D.I. 59.) Plaintiff failed to respond, and the Court
will now decide Defendant's Motion For Summary Judgment on the
papers submitted.

**B.   FACTUAL BACKGROUND**[1]

Defendant Super Fresh is a subsidiary of The Great Atlantic
& Pacific Tea Company, Inc. and operates grocery stores both in
the State of Delaware and elsewhere across the country. (D.I. 44
at 3.)

Plaintiff began working for Defendant as a meat wrapper in
August 1998 in the Meat Department of Defendant's Claymont,
Delaware store. (D.I. 2.) At about the same time, Defendant
presented Plaintiff with a document describing Defendant's policy
against sexual harassment. (D.I. 44 at A25-A27.) Briefly, this
document explains that "[u]nwelcome sexual advances, requests for
sexual favors, and other verbal or physical conduct of sexual
nature" constitutes "sexual harassment" and would not be

---

[1] Because Plaintiff failed to respond to Defendant's Motion
For Summary Judgment, the record before the Court is limited.
The following background section is drawn from Plaintiff's
Complaint, the "Charge of Discrimination" filed with the Delaware
Department of Labor, excerpts from Defendant's deposition of
Plaintiff, and other documents attached in support of Defendant's
Motion For Summary Judgment.

tolerated. (Id. at A27.) The document further explains that
"[i]f you believe that you are being sexually harassed, you must
report the matter immediately . . .," and that "[n]o retaliation
will be tolerated." (Id.) Plaintiff signed and dated the
document, indicating that she "read and understood the 'Policy
Prohibiting Sexual Harassment.'" (Id.)

Throughout her time with Defendant, Plaintiff reported to
the Meat Department Manager, Rich Elliot. (D.I. 44 at A4.)
Although, Plaintiff began as a part-time employee, she eventually
became a full-time employee sometime in mid-2000. (Id. at A7.)
Plaintiff alleges that Mr. Elliot, in addition to screaming and
yelling at her in front of customers (D.I. 44 at A18-19),
inappropriately felt her "breast and rear end." (Id. at A21;
D.I. 2 at 2.) This conduct is alleged to have taken place at
least through November 2001, and perhaps beyond. (Id. at A20-
21.)

In January 2002, Plaintiff went on maternity leave,
returning to work in September 2002. (Id. at A8-9.) Upon
returning, she requested schedule adjustments and leave,
ostensibly for childcare purposes. (D.I. 2 at 2.) According to
Plaintiff, Mr. Elliot either ignored her requests or denied them,
while similar requests from male counterparts were granted. (Id.
at 2, 4.) However, Plaintiff has testified that during her
entire time at Super Fresh all of the other meat wrappers were

3

women. (D.I. 44 at A11.) Furthermore, at the time of Plaintiff's return from maternity leave, there was only one other meat wrapper besides Plaintiff, Shirley Perryman. Perryman was junior to Plaintiff. (D.I. 44 at A12-13.) In these circumstances, Defendant contends, the Collective Bargaining Agreement ("CBA") that governed Plaintiff's employment allowed Plaintiff to select preferred shifts, leaving Perryman to work the remaining shifts. (Id. at 5.)

In August 2003, a female employee senior to Plaintiff, Victoria McWilliams, returned to work as a meat wrapper in the same store as Plaintiff. As a result, Plaintiff was "bumped" from full-time to part-time employment in accordance with the CBA. (See D.I. 44 at A35 ¶ B.) Plaintiff alleges that male employees, when faced with similar circumstances, were not "bumped" but were afforded the opportunity to work at other stores and thus maintain a full-time, 40-hour work week. (Id. at 2, 4.) Shortly thereafter, also in August 2003, Plaintiff went on medical leave. (D.I. 44 at A21; D.I. 2 at 4.)

On January 29, 2004, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC") for discriminatory acts occurring between December 16, 2002, and August 16, 2003. (D.I. 2 at 4.) There, Plaintiff alleged disparate treatment with regard to scheduling, wages, and full-

time employment status and also noted Mr. Elliot's alleged yelling. (Id.) However, she did not mention Mr. Elliot's alleged inappropriate touching. On June 27, 2005, Plaintiff received an EEOC Right To Sue letter. (D.I. 2 at 5.) In March 2005, after having not worked for roughly 18 months, Plaintiff was terminated by Defendant. (D.I. 44 at A21.)

## II. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).

However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the

5

moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 151 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## III. DISCUSSION

By her Complaint, Plaintiff raises three types of gender discrimination: disparate treatment, hostile work environment, and disparate pay. The Court will address these in turn.

### A. Plaintiff's Disparate Treatment Claim

In Title VII sex discrimination actions, courts apply the McDonnell Douglas burden shifting analysis. McDonnell Douglas

6

Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a
plaintiff has the initial burden to establish a prima facie case
of discrimination. Id. at 802. Once a plaintiff succeeds in
establishing his or her prima facie case, the burden shifts to
the defendant employer to proffer some legitimate
non-discriminatory rationale for his or her action. Id. If the
employer provides the court with a non-discriminatory rationale
for his or her employment decision, the burden again shifts to
the plaintiff to demonstrate, by a preponderance of the evidence,
that the employer's rationale is pretextual. Id. at 804.

The Third Circuit has recognized that the elements of the
prima facie case will vary from case to case because of differing
fact scenarios. Pivirotto v. Innovative Systems, Inc., 191 F.3d
344, 352 (3d Cir. 1999)(citing McDonnell Douglas, 411 U.S. at 802
n. 13). In the instant action, to establish her prima facie case
of discrimination, Plaintiff must provide evidence that she: (1)
is a member of a protected class; (2) is qualified for the
position; (3) suffered adverse employment action; and (4) the
circumstances of the adverse employment action give rise to an
inference of discrimination. McDonnel Douglas, 411 U.S. at 802.
Consistent with the Third Circuit's guidance that the elements of
the prima facie case are flexible, this Court has, in a previous
gender discrimination case, described the fourth element as
requiring a showing that similarly situated non-members of the

protected class were treated more favorably than Plaintiff.  See Weaver v. UPS, 307 F. Supp. 2d 616, 619 (D. Del. 2004).  In the Court's view, this statement of the fourth prong of the prima facie case is also useful in this case.

Consistent with its initial burden on summary judgment, Defendant has set forth evidence indicating that there is a lack of evidence to support the fourth prong of a prima facie case of sex discrimination.  For instance, with respect to Plaintiff being "bumped" from full-time to part-time status, Defendant contends that this "bumping," rather than being dictated by gender, was dictated by the terms of the governing CBA.  In support of this position, Defendant has produced the applicable provisions of the CBA, which appear to confirm that "bumping" is, in fact, based on seniority.  (See D.I. 44 at A35.)  Likewise, Plaintiff's deposition testimony suggests that her "bumping" to part-time status was simply an application of the CBA:

   Q.   So under the collective bargaining agreement they
        looked for the most junior person in that position
        who is full time; correct?

   A.   Yes.

   Q.   And that was you; right?

   A.   Yes.

   Q.   And, therefore, when Vicky McWilliams was assigned
        to your store, you were bumped from the position
        from full time to part time; right?

   A.   Yes.

(D.I. 44 at A16-17.)  Defendant further notes that it was not the return of a male employee but a female employee, Victoria

8

McWilliams, that led to Plaintiff being "bumped," such that it makes little sense to view Plaintiff's "bumping" as a gender-related event. (D.I. 44 at 2; id. at A16.) Finally, although Plaintiff contends in her EEOC Charge of Discrimination that only male employees were given the opportunity to work at more than one store and maintain full time status (D.I. 2 at 4.), Plaintiff has testified that "[t]hey told me if I went over to Marsh Road and covered for a week, then I would keep my full time." (Id. at A17.) Thus, in the Court's view, there is evidence indicating that Plaintiff was afforded the same opportunity as male employees to maintain full time status.

With respect to scheduling, Defendant has produced deposition testimony indicating that during the entire time Plaintiff worked at Super Fresh all of the meat wrappers were women. (D.I. 44 at A11.) Thus, Defendant contends, to the extent Plaintiff received an unfavorable work schedule, it could not have been because of her gender. As for Plaintiff's termination, Defendant notes that Plaintiff was not terminated until she had been on leave for 18 months (D.I. 44 at 18), a time period during which she allegedly failed to return to work or advise Defendant of her status. (D.I. 44 at 7.) In these circumstances, Defendant contends, Plaintiff's termination was not gender-related but simply an "operation of policy." (Id.)

9

Because Defendant has met its initial burden on summary judgment, the burden shifts to Plaintiff to establish sufficient evidence from which a jury could find in her favor. However, in this case, Plaintiff cannot meet her burden because she has not responded to the Summary Judgment Motion. Plaintiff may not rest upon the mere allegations of her Complaint, but must set forth specific facts, by means of affidavits or other evidence, to illustrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 322. Plaintiff produces no evidence to show that the circumstances of her being "bumped" to part-time employment, rather than being an application of the CBA, support an inference of discrimination. Indeed, Plaintiff produces no evidence suggesting that male employees were preferentially given the opportunity to maintain full-time employment status by working at other stores. On the contrary, Plaintiff's deposition testimony suggests that she was given exactly this opportunity. (D.I. 44 at A17.) Likewise, there were never any male meat wrappers while Plaintiff worked at Super Fresh (D.I. 44 at A11), and Plaintiff produces no evidence explaining how, in these circumstances, perceived scheduling disparities could be attributable to gender discrimination. With regard to her termination 18 months after she stopped working, Plaintiff offers no evidence suggesting that this was anything but an "operation of policy," as Defendant contends. Because

10

Plaintiff has failed to offer any support for her gender discrimination claim, the Court must accept the facts as alleged by Defendant and supported by its evidence, and conclude that Defendant did not commit gender discrimination.

Accordingly, the Court will grant Defendant's Motion with respect to Plaintiff's disparate treatment discrimination claim.

B.    Plaintiff's Hostile Work Environment Claim

In order to establish a hostile work environment claim, a plaintiff must show that: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) such discrimination would have affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990). However, an employer is entitled to an affirmative defense, referred to as the Faragher/Ellerth defense, where it shows by a preponderance "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765

11

(1998).

Defendant contends that it is entitled to summary judgment based on the Faragher/Ellerth affirmative defense. (D.I. 44 at 8-10.) With respect to the first prong of the defense, Defendant has produced its anti-harassment policy and internal complaint policy. (D.I. 44 at A25-28.) The policy defines harassment, outlines a complaint procedure, and describes specific mechanisms for pursuing a complaint, including a telephone hotline. (Id.) Defendant has further produced documentation signed and dated by Plaintiff indicating that she "read and understood" Defendant's harassment policy. (Id. at A27.) With regard to the second prong of the affirmative defense, Defendant contends that Plaintiff testified to complaining once in 2002 to store managers and her union that Mr. Elliot was not giving her the time she requested, but made no allegation regarding Elliot's alleged yelling or inappropriate touching. (D.I. 44 at 5.) With respect to Elliot's alleged improper touching, Defendant further notes that Plaintiff mentioned no such conduct in her EEOC charge of discrimination. (See D.I. 2 at 4.)

In light of the above evidence, the Court concludes that Defendant has met its initial burden on summary judgment. The burden now shifts to Plaintiff to establish sufficient evidence from which a jury could find in her favor. However, again, Plaintiff cannot meet her burden because she has not responded to

12

the Summary Judgment Motion.  Plaintiff has failed to adduce any
evidence suggesting that Defendant did not take reasonable care
to prevent and remedy sexual harassment through the
implementation of its anti-harassment policy.  Further, Plaintiff
has produced no evidence indicating that she availed herself of
Defendant's anti-harassment policy and procedures, which she was
made aware of at the time she began working for Defendant.  (D.I.
44 at A28.)

Accordingly, the Court will grant Defendant's motion with
respect to Plaintiff's hostile work environment claim.

C.   Plaintiff's Disparate Pay Claim

In order to establish a claim for unequal pay, a plaintiff
must demonstrate that "employees of the opposite sex were paid
differently for performing . . . work of substantially equal
skill, effort and responsibility, under similar working
conditions."  Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir.
2000).  Plaintiff testified at her deposition that, during her
time at Super Fresh, all of the meat wrappers were women and that
men filled the meat cutter positions.  (D.I. 44 at A11.)   The
Court thus concludes that Plaintiff has failed to adduce evidence
sufficient to establish a claim because no male employees
performed sufficiently similar work.  Accordingly, the Court will
grant Defendant's motion with respect to Plaintiff's disparate
pay claim.

13

## IV.  CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion For Summary Judgment.  An appropriate Order will be entered.